IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **EASTWEST BRIDGE**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-2417-L** |
| | § | |
| **TECHNOLOGY PARTNERS FZ, LLC;** | § | |
| **AL-BAH TR BROKERS; and** | § | |
| **BAHARKAN GROUP**, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the Motion for Default Judgment Against Defendants Technology Partners FZ, LLC and Baharkan Group for Counts Numbers One and Two (Doc. 24), filed October 30, 2014. After careful consideration of the motion, record, and applicable law, the court **grants in part and denies in part** the Motion for Default Judgment Against Defendants Technology Partners FZ, LLC and Baharkan Group for Counts Numbers One and Two (Doc. 24).

**I.    Procedural and Factual Background**

EastWest Bridge ("Plaintiff" or "EastWest Bridge") brought this action against Technology Partners FZ, LLC ("Technology Partners"); Al-Bah TR Brokers ("Al-Bah Brokers"); and Baharkan Group (collectively, "Defendants") on September 16, 2011, asserting three contract claims against Defendants based on three separate contracts. EastWest Bridge is located in Dallas, Texas, and Defendants are located in the United Arab Emirates ("UAE"). The three contracts provide the means of compensation agreed to by the parties with respect to the construction of one or more wireless mesh networks for automated meter reading ("AMR") in the Middle East. The wireless mesh

technology was considered "cutting edge" in 2006 and was developed in the United States by an EastWest Bridge affiliate as a means of providing engineering services, such as telecommunications, public utilities, and security monitoring, to a geographical area. Pl.'s App. 2. The first AMR project ("Abu Dhabi/ADWEA Project") was to take place in the UAE for use by the Abu Dhabi Water & Electric Authority ("ADWEA"). *Id.*

The first of the parties' three contracts, a Confidentiality and Non-Circumvention Agreement ("Confidentiality Agreement"), was entered into between EastWest Bridge and Technology Partners on June 14, 2007. Pursuant to this agreement, EastWest Bridge disclosed its confidential contacts and additional details about the potential Abu Dhabi/ADWEA Project and other wireless mesh projects in the UAE and introduced Technology Partners to Al-Bah Brokers and Baharkan Group. *Id.* at 5. In exchange, Technology Partners agreed, while the Confidentiality Agreement was in effect, and for a period of one year after the contract was completed or terminated, to not enter any business relations or contracts with second parties without EastWest Bridge's consent and "without providing compensation [to EastWest Bridge that was] acceptable to the Parties." *Id.* at 14.

Subsequently, on September 2, 2007, Technology Partners and Al-Bah Brokers entered into a Commission Agreement, in which Technology Partners agreed to pay a commission to Al-Bah Brokers in the amount of "10% of the value of each contract with COMMA."[1] *Id.* at 16-17. Technology Partner's payment of the 10% commission was conditioned "upon receiving the first payment from COMMA." *Id.* The Commission Agreement is also limited to projects with COMMA in the Emirate of Abu Dhabi. *Id.* at 17.

---

[1] COMMA refers to the UAE's quasi-governmental telecommunications company.

The third contract, a Memorandum of Understanding ("MOU"), was executed approximately one year later on August 24, 2008, between EastWest Bridge and Baharkan Group. Pursuant to the MOU, Baharkan Group agreed to pay EastWest Bridge a commission of "21.5% based upon gross sales received by Baharkan Group or Baharkan Group's partner, Al-Bah TR. Brokers, from Technology Partners." *Id.* at 22-23. According to the MOU, EastWest Bridge received an initial payment of $28,000 for the first phase of the Abu Dhabi/ADWEA Project based on a total commission of $1,400,000 for this phase. *Id.* The MOU also provides that the remaining commissions due to EastWest Bridge will be paid to EastWest Bridge as that project progresses until completion. *Id.* Unlike the Commission Agreement, the MOU applies to all Middle East contracts obtained by Technology Partners as a result of EastWest Bridge's technology contacts.

After not receiving any further commissions for the Abu Dhabi/ADWEA Project, EastWest Bridge filed this lawsuit. On October 18, 2012, EastWest Bridge requested the clerk to enter default against Defendants. The clerk entered default against Technology Partners and Baharkan Group but declined to enter default against Al-Bah Brokers because the record contained no proof that service of process was effected as to Al-Bah Brokers. Subsequently, the court directed EastWest Bridge to file a motion for default judgment against Technology Partners and Baharkan Group. On February 26, 2013, Plaintiff filed its Motion for Default Judgment Against Defendants Technology Partners and Baharkan Group ("Motion for Default Judgment").

In its original Motion for Default Judgment, Plaintiff sought an award and judgment against Technology Partners and Baharkan Group as follows: (1) "In the amount of $466,500.00 . . . for Count 1 against Defendant Technology Partners [for breach of the Commission Agreement]"; (2) "In the amount of $466,500.00 . . . for Count 2 against Defendant Baharkan Group [for breach of the

**Memorandum Opinion and Order - Page 3**

MOU]"; and (3) "In the amount of $15,372,500.00 . . . for Count 3 against Defendant Technology Partners [for breach of the Confidentiality Agreement]." Pl.'s Mot. Default J. 8.  EastWest Bridge requested permission to conduct discovery pursuant to Federal Rule of Civil Procedure 69(a)(2) in the event the court concluded that its evidence of damages as to Count Three of its contract claim for $15,372,500 in damages against Technology Partners was insufficient.

On September 30, 2013, the court entered a memorandum opinion and order, and judgment, granting in part and denying in part the Motion for Default Judgment.  The court determined that EastWest Bridge was entitled to an award of $466,500 in damages jointly and severally against Technology Partners and Baharkan Group but concluded, based on the limited information provided, that the request for $15,372,500 in damages under the Confidentiality Agreement was too speculative.  The court also denied EastWest Bridge's request to conduct discovery pursuant to Rule 69(a)(2) after determining that the rule only provides for postjudgment discovery by a judgment creditor, not prejudgment discovery.  The court also dismissed without prejudice the claims against Al-Bah Brokers because service of process was not effected as to Al-Bah Brokers, even though the court allowed an extension of time for service. On October 28, 2013, EastWest Bridge moved the court to modify the default judgment.

By memorandum opinion and order dated September 29, 2014, the court concluded that Plaintiff's reasons for requesting the court to modify the judgment were not a sufficient basis for amending the judgment and explained that Plaintiff's requested amendment to the damages awarded amounted to an impermissible double recovery.  The court, nevertheless, determined *sua sponte* for other reasons that the September 30, 2013 memorandum opinion and order and the judgment should be vacated:

A.   **Counts One and Two (Commission Agreement and MOU)**

EastWest Bridge contends that the court's September 30, 2013 opinion only includes a single award of $466,500 in damages jointly and severally against Technology Partners and Baharkan Group for their "breaches of the contract at issue," whereas EastWest Bridge previously requested separate awards of $466,500 ($466,500 x 2) against Technology Partners and Baharkan Group for their breaches of two separate contracts–the Commission Agreement and MOU. EastWest Bridge therefore requests that the court amend the judgment to include an award of $466,500 against Technology Partners for breach of the Commission Agreement (Count One) and an award of $466,500 against Baharkan Group for breach of the MOU (Count Two).

The court provided EastWest Bridge with a single award of $466,500 jointly and severally against Baharkan Group and Technology Partners because, although Defendants' breaches arise from separate contracts, their combined breaches gave rise to a single injury. According to the affidavit of Steve Stone ("Stone"), the founding partner of EastWest Bridge, the first stage of the Abu Dhabi/ADWEA Project was for a total amount of $23,000,000. Doc. 19-1 at 9, ¶ 22 ("Per the Dubai Meeting, the first stage of the project regarding AMR's was for $23,000,000 . . . with payment to EastWest Bridge due upon completion."). Based on this amount, the court calculated that Technology Partners was required under the Commission Agreement to pay Al-Bah Brokers a 10% commission for amounts it received from COMMA, and Baharkan Group in turn was required under the MOU to pay EastWest Bridge 21.5% of the amounts it or Al-Bah Brokers received from Technology Partners. The court therefore concluded that EastWest Bridge was entitled to $494,500 or 2.15% of $23,000,000, as requested in the Motion for Default Judgment. Since EastWest Bridge acknowledged that it had already received $28,000, the court agreed with EastWest Bridge that its damages under the Commission Agreement and MOU totaled $466,500.

Accordingly, if the for[e]going calculation is correct, a single award of $466,500 against Technology Partners and Baharkan Group jointly and severally for their breaches of the Commission Agreement and MOU is appropriate, whereas the relief requested by EastWest Bridge – (1) "In the amount of $466,500.00 . . . for Count 1 against Defendant Technology Partners [for breach of the Commission Agreement]"; (2) "In the amount of $466,500.00 . . . for Count 2 against Defendant Baharkan Group [for breach of the MOU]" – would have resulted in an impermissible double recovery. Pl.'s Mot. Default J. 8. For this reason and the reasons that follow, the court **denies** EastWest Bridge's request for the court to amend the judgment to provide it with two separate awards of $466,500 against Technology Partners and Baharkan Group.

> The court nevertheless determines *sua sponte* that the September 30, 2013 memorandum opinion and order, and the judgment entered, in this case should be vacated for another reason. In revisiting the evidence submitted in support of EastWest Bridge's Motion for Default Judgment, the court noticed a discrepancy between Stone's affidavit and the MOU, which undermines EastWest Bridge's request for and the court's prior award of $466,500 to EastWest Bridge against Technology Partners and Baharkan Group under the Commission Agreement and MOU.
>
> Specifically, the MOU indicates that Eastwest Bridge received an initial payment of $28,000 for the first phase of the Abu Dhabi/ADWEA Project based on a total available commission for this phase of $1,400,000. Doc. 19-4 at 1 ("EastWest Bridge recognizes that the total commission available for the first phase of the Abu Dhabi/ADWEA project is equal to $1,400,000 USD. EastWest Bridge has received an initial payment related to the project in the amount of $28,000 USD of which the total commissions due to EastWest Bridge will be paid as the project progresses up to completion."). Based on a total available commission of $1,400,000 for the first phase of the Abu Dhabi/ADWEA project, EastWest Bridge's share would have been $30,100 or 2.15% of $1,400,000, which is close to the amount EastWest Bridge was actually paid for the first phase of the Abu Dhabi/ADWEA Project. Thus, it appears that EastWest Bridge has already been compensated for the first phase of the Abu Dhabi/ADWEA Project.
>
> In his affidavit, however, Stone states: "Per the Dubai Meeting, the first stage of the project regarding AMR's was for $23,000,000 . . . with payment to EastWest Bridge due upon completion." Doc. 19-1 at 9, ¶ 22. Based on this total amount for the first phase, Stone concluded in his affidavit that EastWest Bridge is entitled to $494,500 under the MOU or 2.15% of $23,000,000. *Id.* Neither Stone nor the Complaint, though, explain the discrepancy between the MOU and Stone's affidavit regarding the total dollar amount for the first phase of the Abu Dhabi/ADWEA project. According to the Complaint and Motion for Default Judgment, the Abu Dhabi/ADWEA project was a $23,000,000 project. From this, it appears that EastWest Bridge contends that the entire Abu Dhabi/ADWEA project totaled $23,000,000; however, this does not appear to comport with Stone's statement that "[p]er the Dubai Meeting, the first stage of the project regarding AMR's was for $23,000,000." *Id.*; *see also* Pl.'s Compl. ¶ 23; Pl.'s Mot. for Default J. ¶¶ 7, 10, 11, 13. This discrepancy causes the court to question whether the prior award of $466,500 to EastWest Bridge against Technology Partners and Baharkan Group is supported by the record. Accordingly, the court *sua sponte* **vacates** its September 30, 2013 memorandum opinion and order and the judgment, with respect to Technology Partners and Baharkan Group, and will require EastWest Bridge to file an amended motion for default judgment as to Counts One and Two.

Mem. Op. and Order 6-9 (Doc. 23).

**Memorandum Opinion and Order - Page 6**

Based on foregoing reasoning, the court denied EastWest Bridge's request for the court to amend the judgment to provide it with two separate awards of $466,500 against Technology Partners and Baharkan Group but decided it was appropriate to allow EastWest Bridge to file an amended motion for default judgment with respect to Technology Partners and Baharkan Group to correct the deficiencies noted. The court, therefore, vacated its September 30, 2013 memorandum opinion and order and the judgment; reopened the case; and directed Plaintiff to file an amended motion for default judgment. In doing so, the court noted that its prior dismissal without prejudice of the claims against Al-Bah Brokers for failure to effect service was not affected. The court granted EastWest Bridge's request for additional time to conduct discovery with respect to Count Three, but denied without prejudice EastWest Bridge's request to sever Count Three, after determining that the decision to vacate the September 30, 2013 memorandum opinion and order and the judgment mooted, for the time being, the severance request.

The court set a deadline of October 31, 2014, for EastWest Bridge to file an amended motion for default judgment on Counts One and Two that cured the discrepancy noted with respect to these claims. The court set a deadline of July 1, 2015, for EastWest Bridge to conduct additional discovery or investigate its claim under Count Three and file an amended motion for default as to this claim. The Motion for Default Judgment Against Defendants Technology Partners FZ, LLC and Baharkan Group for Counts Numbers One and Two (Doc. 24), filed by Plaintiff on October 30, 2014, pertains only to Counts One and Two. No amended motion for default was filed with respect to Count Three by July 1, 2015, as directed by the court. Accordingly, the court: (1) assumes that Plaintiff no longer intends to pursue its claim under Count Three and **dismisses without prejudice** this claim; and (2) limits its discussion herein to Counts One and Two.

**Memorandum Opinion and Order - Page 7**

**II.     Amended Motion for Default Judgment on Counts One and Two**

Defendants Technology Partners and Baharkan have not filed an answer to Plaintiff's Original Complaint or otherwise defended in this lawsuit. Additionally, Technology Partners and Baharkan are not infants, incompetent or in the military. Plaintiff is therefore entitled to judgment against Defendants Technology Partners and Baharkan, and the court accepts as true the well-pleaded allegations stated by Plaintiff in its Complaint and the facts set forth in the evidence in support of Plaintiff's Motion for Default Judgment Against Defendants Technology Partners FZ, LLC and Baharkan Group for Counts Numbers One and Two (Doc. 24).

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *See United States v. Shipco Gen.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (citing *TWA v. Hughes*, 449 F.2d 51, 70 (2nd Cir. 1971)), *rev'd on other grounds*, 409 U.S. 363 (1973); *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 34 (1st Cir. 1980)).

With respect to Count One, Plaintiff asks the court to award a total of $496,600 against Technology Partners for its breaches of the Commission Agreement and Memorandum of Understanding with respect to the first and second phased of the project. With respect to Count Two, Plaintiff asks the court to award a total of $496,600 against Baharkan for its breaches of the Commission Agreement and Memorandum of Understanding with respect to the first and second phased of the project. In support of its motion for default judgment, Plaintiff submitted the affidavit of Steve Stone ("Stone"), the founding partner of EastWest Bridge and copies of the relevant agreements. According to Plaintiff, its request for two separate awards of $496,600 in damages under Counts One and Two against Defendants Technology Partners and Baharkan consists of

$2,100 for the outstanding commission owed by each Defendant for the first phase of the pilot-test project and $494,500 for damages representing the outstanding balance owed by each Defendant for the second phase or full project as required under the Commission Agreement and the MOU.

The court concludes that Plaintiff's amended motion for default judgment should be granted in part and denied in part. As a preliminary matter, the court notes that Count One, as pleaded, pertains only to Technology Partners' breach of the Commission Agreement, and Count Two, as pleaded pertains only to Baharkan's breach of the MOU. Compl. 8-9. Thus, Plaintiff cannot recover against Technology Partners under Count One for breaches of the Commission Agreement *and* the MOU. For the same reason, Plaintiff cannot recover under Count Two against Baharkan for breaches of the Commission Agreement *and* the MOU. The court, nevertheless, finds that there is sufficient evidence to support a total award of damages against Technology Partners and Baharkan, jointly and severally, in the amount of **$496,600**, and Plaintiff's motion with respect to Counts One and Two is **granted** to this extent.

The court, however, **denies** EastWest Bridge's request for the court to provide it with two separate awards of $496,600 against Technology Partners and Baharkan Group. As the court previously explained in denying Plaintiff's motion to modify the judgment, allowing EastWest Bridge to recover $496,600 against Technology Partners for breach of the Commission Agreement (Count One) and an award of $496,600 against Baharkan Group for breach of the MOU (Count Two) would result in an impermissible double recovery. Although Defendants' breaches arise from separate contracts, their combined breaches gave rise to a single injury. This is so even though Plaintiff has asserted a claim against Technology Partners for breach of the Commission Agreement under Count One and a separate contract claim under Count Two against Baharkan for breach of the

**Memorandum Opinion and Order - Page 9**

MOU. It is for this reason that the court previously declined to modify the judgment to provide Plaintiff with two separate awards of $466,500 against Technology Partners and Baharkan Group.

### III.     Attorney's Fees

The issue of attorney's fees and costs is not addressed in Plaintiff's motion. Accordingly, If Plaintiff wishes to pursue an award of attorney's fees, it may file a motion pursuant to Federal Rule of Civil Procedure 54(d)(2), and the court will address the issue postjudgment.

### IV.     Conclusion

For the reasons stated, the court **grants in part and denies in part** the Motion for Default Judgment Against Defendants Technology Partners FZ, LLC and Baharkan Group for Counts Numbers One and Two (Doc. 24). Accordingly, the court hereby **orders** that default judgment be entered in favor of Plaintiff against Technology Partners and Baharkan, jointly and severally, in the amount of **$496,600** damages and **$99,047.89** in prejudgment interest calculated at a rate of **five percent per annum**. Postjudgment interest shall accrue on the total amount of **$595,647.89** (damages plus prejudgment interest) at the applicable federal rate of **.37 percent per annum** from the date of this judgment until it is paid in full.[2] Further, as no amended motion for default judgment

---

[2] Prejudgment interest is calculated under state law in diversity cases. *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002). In Texas, prevailing parties receive prejudgment interest as a matter of course. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1329-30 (5th Cir. 1994). "The Texas Supreme Court has recognized two separate bases for the award of prejudgment interest: (1) an enabling statute; and (2) general principles of equity." *International Turbine Servs., Inc. v. VASP Brazilian Airlines, Inc.*, 278 F.3d 494, 449 (5th Cir. 2002) (quoting *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998)). "[S]tatutory prejudgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases." *International Turbine Servs., Inc.*, 278 F.3d at 449. Because EastWest Bridge's contract claims do not fall within the statutory provisions, prejudgment interest in this case is governed by Texas common law. *Id.* "Texas common law allows prejudgment interest to accrue at the same rate as postjudgment interest on damages awarded for breach of contract." *Id.* When, as here, an interest rate is not specified in the parties' contract, prejudgment interest is calculated based on the statutory rate for postjudgment interest provided in section 304.003 of the Texas Finance Code. *Id.* Section 304.003 of the Texas Finance Code provides that the postjudgment interest rate is "five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System . . . is less than five percent[.]" Tex. Fin. Code Ann. § 304.003(c)(2). The current prime rate is less than five percent. Accordingly, the prejudgment interest rate that

**Memorandum Opinion and Order - Page 10**

was filed with respect to Count Three by July 1, 2015, as directed by the court, the court **dismisses without prejudice** this claim pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute and comply with a court order. The court will issue a judgment by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 11th day of September, 2015.

Sam A. Lindsay
United States District Judge

---

the court will apply is five percent. Under both the common law and the Texas Finance Code, prejudgment interest begins to accrue on the earlier of: (1) 180 days after the date a defendant received written notice of a claim, or (2) the date suit is filed. Tex. Fin. Code Ann. § 304.104 (West 2006); *see Johnson & Higgins of Texas, Inc.*, 962 S.W.2d at 532 (extending the statutory rule to prejudgment interest awards governed by the common law; that is, those awards that are not based on wrongful death, personal injury or property damage, or otherwise governed by an agreement of the parties). It is unclear from the record when Defendant received written notice of Plaintiff's claim. The court therefore determines that prejudgment interest should be calculated from the date this action was filed on **September 16, 2011**, to the date of the judgment. With respect to an award of postjudgment interest, federal law applies on "any judgment in a civil case recovered in a district court . . . including actions based on diversity of citizenship." *Travelers Ins. Co. v. Liljeberg Enters., Inc.* 7 F.3d 1203, 1209 (5th Cir. 1993) (citation omitted). A court awards postjudgment interest pursuant to 28 U.S.C. § 1961. Accordingly, postjudgment interest shall accrue at the applicable federal rate, which is currently .37 percent per annum.

**Memorandum Opinion and Order - Page 11**